UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

BARRY W. RITCHIE, TDOC No. 99117 )
)
v. ) NO. 1:10-CV-203
) *Chief Judge Collier*
TENNESSEE BOARD OF PROBATION )
and PAROLE )

## MEMORANDUM

Acting *pro se*, Barry W. Ritchie, a prisoner in the custody of the Tennessee Department of Correction [hereinafter, TDOC], brings this civil rights action for declaratory and injunctive relief under 42 U.S.C. § 1983, alleging his constitutional rights were violated during his state parole proceedings, (Ct. File No. 2). The Defendant, the Tennessee Board of Probation and Parole ["the Board"], has moved to dismiss the complaint, (Ct. File No. 10). Plaintiff opposes the motion, (Ct. File No. 13). However, for the reasons which follow, Defendant's motion will be **GRANTED** and this case will be **DISMISSED**.

**I.     Standards of Review**

In ruling on a defendant's motion to dismiss, all well-pleaded factual allegations contained in the complaint must be accepted as true, and all reasonable inferences must be drawn in a plaintiff's favor. *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted). Even so, the complaint must be sufficient "to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which simply means the factual content pled by a plaintiff must permit a court "to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, unless the contentions of facts in a complaint show a right to relief beyond a "speculative level," the pleading will not pass muster. *Twombly*, 550 U.S. at 555 (citation omitted). Moreover, a court must be mindful of the rule which requires a *pro se* pleading to be generously construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**II.     Factual Background**

According to the face of the complaint, Plaintiff was convicted in 1981 for aggravated rape and armed robbery by a Hamilton County Criminal Court jury. He was sentenced, for these respective offenses, to life and a concurrent ten years. On May 4, 2009, after serving some twenty-eight years in prison, Plaintiff's first parole release hearing was held. Using statutory standards, rules, and regulations then in effect, which did not exist at the time of Plaintiff's criminal conduct, the Board denied him parole and scheduled his next hearing for May of 2014. In rejecting Plaintiff's request for parole, the Board relied on three criteria: (1) the seriousness of Plaintiff's offenses, (2) the substantial adverse effect his release would have on prison discipline, and (3) continuing his correctional treatment, medical care, vocational or other institutional training would enhance his ability to abide by the laws when released at a later date.

Plaintiff pursued an appeal of the Board's action through the state administrative channels, alleging significant procedural errors. He was unsuccessful in obtaining relief and

now brings this § 1983 action to vindicate the constitutional rights which were allegedly violated during those parole proceedings.

**III.    Discussion**

Plaintiff maintains the Board's application of parole laws and guidelines in effect at the time of his hearing, rather than those in effect at the time of his crimes to determine whether to grant him parole violated the Due Process and Ex Post Facto Clauses of the Constitution. Plaintiff asserts that applying the new law to him during his parole proceedings violated due process by dispossessing him of a liberty interest in parole he acquired under the old law. Plaintiff also asserts the same conduct on the part of the Board likewise violated the ex post facto provision of the Constitution, by changing his punishment and inflicting a greater punishment on him than did the law then in existence when he committed the crime.

In its motion to dismiss, Defendant argues Plaintiff's contentions concerning a deprivation of due process do not state a claim for a constitutional violation and his allegations involving ex post facto violations are groundless.

    A.    *Due Process Claims*

The Fourteenth Amendment forbids state actors to "deprive any person of life, liberty or property without due process of law [.]" U.S. Const. amend. XIV, § 1. A procedural due process claim, such as the one alleged here,[1] is composed of two elements. A plaintiff must

---

[1] Plaintiff characterizes his due process claim as both procedural and substantive, but the latter description is inapt, since substantive due process protections "have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity," *Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1232-33 (6th Cir.1997) (quoting *Albright v. Oliver*, 510 U.S. 266, 272 (1994)), and since a release on parole is not in this category. *See Chapman v. United States*, 500 U.S. 453, 465 (1991) ("Every person has a fundamental right to liberty . . . until [the Government] proves his guilt beyond a

show he enjoyed a protected liberty interest and the process owed him before depriving him of the interest was denied. *See Board of Regents v. Roth*, 408 U.S. 564, 569-570 (1972). The first element is the one which is missing here.

A liberty interest arises either from the Due Process Clause in the Fifth or Fourteenth Amendment of the Constitution or from the rights conferred by a state. The possibility of obtaining parole is not a right secured by the U.S. Constitution. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1979). However, a state may create a liberty interest in parole through means of its parole scheme, and as Plaintiff points out, in *Mayes v. Trammell*, 751 F.2d 175 (6th Cir. 1984), the United States Court of Appeals for the Sixth Circuit held Tennessee had so done.

But Tennessee amended its parole regime in 1985 and discarded any entitlement to parole which had inhered in the predecessor statute. This circuit reached that very conclusion in *Wright v. Trammell,* 810 F.2d 589 (6th Cir.1987), by finding that, under the statute as rewritten, Tennessee inmates no longer possessed a liberty interest in parole. *Greenholtz* and *Wright* together establish that a prisoner has no protectible liberty interest in obtaining parole, under the U.S. Constitution or Tennessee law. *See Seagraves v. Tennessee Board of Probation & Parole*, 86 Fed. Appx. 45, 2003 WL 22976652, *2 (6th Cir. Dec. 8, 2003) (finding no liberty

---

reasonable doubt at a criminal trial . . . ."). Moreover, as discussed in other parts of this opinion, any liberty interest in parole is provided by state law and only fundamental interests arising from the Constitution enjoy substantive due process protections. *Valot*, 107 F.3d at 1233 (citing *Regents of the Univ. Of Michigan v. Ewing*, 474 U.S. 214, 229 (1985) (Powell, J., concurring)).

interest in parole in Tennessee) (citing to *Greenholtz* and *Wright*); *Rowan v. Traughber,* 48 Fed. Appx. 489, 2002 WL 31085197 (6th Cir. 2002) (same).

As the cited cases and the above analysis show, Plaintiff has failed to demonstrate he had a right to release on parole protected by the Constitution or state law. *Bell v. Anderson,* 301 Fed. Appx. 459, *461, 2008 WL 4935941, *2 (6th Cir. Nov. 18, 2008) (where parole is purely discretionary under state law, "a convicted person has no legitimate claim of entitlement to parole before the expiration of a valid sentence of imprisonment---and thus no liberty interest in being paroled"); *Toussaint v. McCarthy*, 801 F.2d 1080, 1092 (9th Cir. 1986) ( "A state-created liberty interest exists only as long as the statute or regulation creating it remains effective[; i]f the state repeals the statute or eliminates the regulation, the liberty interest ceases to exist."), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).

Put simply, plaintiff has no liberty interest in obtaining parole which demands due process protection. Even if he did have, "[d]ue process in parole proceedings is satisfied as long as the procedure used affords the inmate an opportunity to be heard, and, if parole is denied, the Parole Board informs the inmate of the basis upon which it denied parole." *Swihart v. Wilkinson,* 2006 WL 3368823, at *3 (6th Cir. Nov. 21, 2006) (citing *Greenholtz, supra*). Plaintiff had a parole hearing, he was told why parole was denied, and, accordingly, he fails to state a procedural due process claim.

B.  *Ex Post Facto Claims*

The Constitution prohibits states from passing any ex post facto law. U.S. CONST. art. I, § 10, cl. 1. An ex post facto law possesses two components: (1) "it must apply to events

5

occurring before its enactment," and (2) "it must disadvantage the offender affected by it." *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (citation and quotation marks omitted). It is important to remember that "[t]he existence of an *ex post facto* violation turns on whether an individual was deprived of fair notice, 'not [on] an individual's right to less punishment.'" *United States v. Kumar*, 617 F.3d 612, 628 (2d Cir. 2010) (citing *Weaver v. Graham*, 450 U.S. 24, 30 (1981)). Parole eligibility is part of the law annexed to an offense when committed; therefore legislative action which constricts parole eligibility by modifying requirements for such eligibility may violate the *ex post facto* clause. *Weaver*, 450 U.S. at 32-33.

If, by its own terms, the challenged statute does not reveal a significant risk of enlarging the punishment, the prisoner must show that, as applied to his own sentencing, the statute created such a risk. *Garner v. Jones*, 529 U.S. 244, 255 (2000). In making this showing, a prisoner cannot rely on mere speculation or supposition as to the increase in punishment, but must produce actual evidence of the detrimental impact. *Department of Corr. v. Morales*, 514 U.S. 499, 509 (1995); *Teague v. Cox*, 2008 W.L. 2518699, *5 (E.D. Tenn. June 19, 2008) (requiring a prisoner "to proffer actual evidence, rather than mere speculation, regarding the retroactive applications' disadvantageous effect") (quoting *Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006)).

"[N]ot every change in the law raises ex post facto concerns." *Snodgrass v. Robinson*, 512 F.3d 999, 1002(8th Cir. 2008). The issue is not "on whether a legislative change produces some ambiguous sort of disadvantage . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Morales*, 514

6

U.S. at 506 n.3 (internal quotation marks omitted)." A court considering such a challenge must compare the parole statutes in effect at the time of the commission of the covered crime with the retrospectively-applied version of the statute, *Foster v. Booker*, 595 F.3d 353, 362 (6th Cir. 2010), to determine whether the practical impact of the change in the parole rule poses a significant risk of enlarging the amount of time a prisoner actually serves. *Michael v. Ghee*, 498 F.3d 372, 383 (6th Cir. 2007) (citing *Garner*, 529 U.S. at 255).

Plaintiff points to several features distinguishing the old parole scheme from the new one, which he claims operates to his disadvantage and runs counter to ex post facto principles. The Court examines each feature in turn.

        1. *"Worthy-Candidate" Argument*

Plaintiff first asserts, at the time he committed his crimes, the Board presumed each inmate who was eligible for parole to be a worthy candidate and further presumed an inmate, when first eligible for parole, would be granted parole. However, the presumption was repealed and the new parole rules did not contain a worthy-candidate presumption. As Plaintiff sees it, the Board violated ex post facto law during his hearing by failing to indulge in those presumptions in determining his suitability for parole.

In *Kaylor v. Bradley*, 912 S.W.2d 728 (Tenn. Ct. App. 1995), the state court was asked to decide whether the Parole Board's refusal to engage in a worthy-candidate presumption, as contained in parole rules and regulations at the time the convict committed a murder, amounted to an ex post facto violation. The state court held the Board's declination to afford the inmate the benefit of the presumption that, when he first became eligible for parole, he would be granted

7

parole was not an infringement of ex post facto law. Noting that an administrative regulation cannot be inconsistent with a statute on the same subject, the state court found the presumption in the parole regulation to be inconsistent with the statutory provision requiring the Board to determine parole on an individualized case-by-case basis. The state court ultimately found the presumption had been invalid even before it was repealed. The invalidity of the good-candidate presumption has been decided by state courts solely as a matter of Tennessee law: that decision is binding on this Court. *See e.g., Bush v. Palm Beach County Canvassing Bd.*, 531 U.S. 70, 76 (2000) ( per curiam ) ("As a general rule, this Court defers to a state court's interpretation of a state statute."); *International Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380, 387 ("[W]e have no authority to review state determinations of purely state law.").

This Court now concludes Plaintiff cannot show the Board's refusal to apply at his parole hearing a good-candidate presumption, given its legal invalidity *ab initio*, created a sufficient risk of "a longer period of incarceration than under the earlier rule." *Garner,* 529 U.S. at 255. This conclusion comports with prior rulings of this Court, *see Teague*, 2008 WL 2518699, at *5 (citing *Berry v. Traughber*, 48 F. App'x 483, 485 (6th Cir. 2002), and other federal courts in this State. *See White v. Tenn. Bd. of Prob. & Paroles*, 2007 WL 2572196, *6 n. 1 (W.D.Tenn. Aug.31, 2007)). No relief is warranted on Plaintiff's first ex post facto claim.

2. *The "Seriousness of the Offense" Argument*

In declining to grant Plaintiff parole, the Board considered the seriousness of his offenses, to wit, aggravated rape and armed robbery. According to Plaintiff, at the time of his 1981

8

offenses, the seriousness of the crime was not a factor to be considered in determining an inmate's suitability to go on parole. Plaintiff claims this specific provision inflicts a greater punishment than the law annexed to the crimes when he committed them and, thus, the Board's application of this factor to deny him parole constitutes an ex post facto violation.

The Court compares the old and new parole provisions. Under the old parole rule, the Board had discretion to deny parole if, by a majority vote, it determined a prisoner's release on parole "would depreciate the seriousness of the offense or would promote disrespect for the law." *Mayes v. Trammell*, 751 F.2d 175, 178 (6th Cir. 1984) (citing Tenn. Bd. Of Parole Rule 1100-1-1-.06(3)(b)), *superceded by rule as stated in Wright v. Trammell*, 810 F.2d 589 (6th Cir. 1987). The new parole statute removes that discretion by providing as follows: "[N]o inmate convicted shall be granted parole if the board finds that . . . [t]he release from custody . . . would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law." Tenn. Code. Ann. § 40-35-503(b)(2). Parole provisions which alter the level of discretion, as do these, may rise to the magnitude of an ex post facto violation. See *United States v. Duane*, 533 F.3d 441, 447 (6th Cir. 2008) (discussing the United States Sentencing Guidelines) (citing Ghee, 498 F.3d at 382, and *Garner*, 529 U.S. at 253).

The Court now turns to the wording of the statute. Here, as in *Garner*, the framework of the statute, specifically, the presence or absence of discretion, does not show a danger of prolonging Plaintiff's confinement to a significant degree. The next step is to determine whether the application of the seriousness provision creates a significant risk of extending Plaintiff's

9

imprisonment. It is Plaintiff's burden to "proffer actual evidence, rather than mere speculation, regarding the retroactive application's disadvantageous effect." *Dyer*, 465 F.3d at 284.

Plaintiff argues the application of the "seriousness" factor left him with "no chance of making parole because he was convicted of serious offenses." Not only did the Board's use of this factor create a substantial *risk* of increasing his confinement, so Plaintiff insists, but the seriousness factor lengthened his imprisonment *in actual fact* because the four Board members who voted to deny Plaintiff parole in May of 2009 based their unfavorable decision on the seriousness of his offenses.

Under the parole statute in effect in 1981, parole was granted "only if the board is of opinion that there is reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society." Tenn. Code Ann. 40-3614 (1981). In parole decisions made under the cited statute, "[t]he Board considered the depreciation of the seriousness of the offense as incompatible with the welfare of society." *York v. Tennessee Bd. of Prob. & Parole*, 2010 WL 3522330, at * 3 (M.D. Tenn. Aug. 12, 2010). There is no disagreement about the severity of Plaintiff's crimes of aggravated rape and armed robbery. *See e.g., Tomlinson v. State*, 1999 WL 270383, at *1 (Tenn. Ct. App. May 5, 1999) ("[T]he offenses of robbery by use of a deadly weapon [and] aggravated rape . . . were Class X Felonies under Tenn. Code Ann. § 39-1-701 et seq. (1982) [repealed].");[2] *Mosley v. Tennessee Board of Paroles*, 1996 WL 631477, at *3

---

[2] At the time of Plaintiff's offenses, a Class x felony was assigned to the state's highest crime category.

10

(Tenn. Ct. App., Nov. 1, 1996) ("[I]t would be belaboring the obvious to state that aggravated robbery and burglary are both serious offenses.").

As can be seen on the face of the parole provisions at issue, the gravity of the offense(s) of conviction was a component in the Board's parole decision under both the old parole rules and statutes (when petitioner committed his Class x felonies), as well as the new parole regime. Thus, when the offenses occurred, Plaintiff had notice that the severity of his criminal acts would affect his suitability for parole, and, therefore, the application of this factor does not violate ex post facto laws. *See Seagroves*, 86 F.App'x 45 at *48 (no ex post facto violation where Board applied 2002 state parole rules—not those in effect 1973, when crime was committed—given the seriousness of Tennessee inmate's crime); *accord, Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 483 (Tenn. 1997) (the denial of parole based on this factor is not a constitutional violation); *Williams v. Tennessee Bd. of Prob. & Parole*, 2007 WL 3132935, * 3 (Tenn. Ct. App. Oct. 26, 2007) (no ex post facto violation).

### 3. *Number of Parole Board Members Who Must Agree*

Another infelicitous change, from Plaintiff's perspective, is an increase of the number of Board members who must agree with any decision to grant parole. Under the old rules, the Board was composed of five members and a majority of three members was required to grant parole, *see* Tenn. Code Ann.§ 40-3602(d) (Supp. 1981). Under the new rules, however, the Board membership has been increased to seven and parole cannot be granted to an inmate, like Plaintiff, who committed aggravated rape, without the concurrence of four Board members, *see* Tenn. Code. Ann. § 40-28-103(a) and § 40-28-105(d)(4)(D).

The one Board member increase (from three to four) required to concur in a decision to grant parole is a necessary correlate to the two-person enlargement in the membership of the Board itself (from five members to seven) and to the "majority" rule established in the legislation. The old rule required a majority of Board members to agree on a grant of parole; the new rule requires the same thing, *see* Tenn. Code Ann. § 40-28-105(d)(4)(D). The questioned change alters only the number of decisionmakers and, clearly, such a change is procedural.

Changes which are purely procedural, generally, do not implicate ex post facto principles. *See Weaver*, 450 U.S. 24 (no ex post facto problem where change is merely procedural and does not increase the penalty, modify elements of offense, or alter ultimate facts necessary to establish guilt); *Dobbert v. Florida*, 432 U.S. 282, 293 (1977) (ex post facto law not violated by every legal change which may disadvantage a prisoner or which limits "the legislative control of . . . modes of procedure" not affecting "matters of substance"), *Ruhlman v. Brunsman*, __ F3d __, __, 2011 WL 6441210, at *3 (6th Cir. Dec. 23, 2011) ("Moreover, the Ex Post Facto clause does not apply to procedural changes."); *but see Beazell v. Ohio*, 269 U.S. 167, 171 (1925) ("Just what alterations of procedure will be held to be of sufficient moment to transgress the [ex post facto] prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree.").

Moreover, expressed as a percentage, the old law required the concurrence of 60% of the Board membership (3 of 5) to release an inmate on parole, whereas the new law requires concurrence of only 57% of the Board (4 of 7). Indeed, the questioned change arguably may be characterized as more lenient to an inmate seeking to be paroled. Since the new rule is

ameliorative, it does not implicate ex post facto principles. *Dobbert*, 432 U.S. at 294 ("It is axiomatic that for a law to be ex post facto it must be more onerous than the prior law.").

The Ex Post Facto Clause does not countenance judicial micromanagement of state parole schemes, "nor forbid[] any legislative change that has any conceivable risk of affecting a prisoner's punishment, including such innocuous adjustments as changes to the membership of the [Parole] Board." *Morales*, 514 U.S. at 508; *Dyer*, 465 F.3d at 285-86 (citing *Garner*, 529 U.S. at 250 for its classification of *Morales* as a case concerned with a pure procedural modification to parole laws). This Court, mindful of the warning in *Morales*, rejects the proposition that this "minor (and perhaps inevitable) mechanical change," is invalid under ex post facto principles. *Morales*, 514 U.S. at 508.

### 4. *The "Shall/May" Argument*

Still another change allegedly disfavoring Plaintiff was the modification of statutory language, i.e, the removal of the word "shall" from the old parole law and the addition of the word "may" in the new law. The pertinent provision in the old statute reads:

> Parole being a privilege and not a right, no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of the duties assigned in prison, but only if the board is of the opinion that there is reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. If the board shall so determine, such prisoner <u>shall</u> be allowed to go upon parole.

(Ct. File No. 2, Compl. at 7 (citing Tenn. Code Ann. § 40-3614 (1981) (emphasis added by Plaintiff)). The provision in the new statute is a mirror image of its predecessor, except for the substitution of the word "may" for the word "shall," (*Id.*, Comp. at 8). The significance of the

shall/may change, as Plaintiff sees it, lies in the fact that the word "shall" made parole mandatory, if certain conditions were met, whereas the word, "may," used in the new rules, confers discretion on the Board to grant parole, even if those same conditions are satisfied.

In *Dyer v. Bowlen*, a case cited by Plaintiff, the Sixth Circuit considered essentially the same shall/may issue offered here. Because the record was too sparse to permit the Sixth Circuit to decide the issue, the case was remanded for the purpose of allowing the prisoner an opportunity to present proof of a substantial risk of increased punishment inherent on the face of the statute or in its practical implementation. Upon remand, the prisoner received a hearing under the old parole standards, and his case was dismissed because he could not show facial differences between the two statutes or any practical impact of the new parole standard on him. *Dyer v. Morrow*, 2010 WL 199986, *4 (E.D. Tenn. Jan. 13, 2010).

Plaintiff emphasizes the word "shall" in last sentence of the old parole statute, while ignoring the term "only if" in the next to the last sentence of the statute, (i.e., "[A] prisoner shall be released on parole . . . *only if* the board is of the opinion that there is reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society."). Each word in a statute has meaning and must be given effect. *See Crump v. Lafler*, 657 F.3d 393, 401 (6th Cir. 2011) ("The starting point of statutory analysis, of course, is the text of the statute itself.") (citing *McNeill v. United States*,131 S.Ct. 2218, 2221 (2011)); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (where the statutory language is clear and unambiguous, judicial inquiry ends). The dictionary defines "only" as "*** A.1. Solely, merely, exclusively . . ." and "if"

14

as "*** A.I. On condition that; given or granted that; in (the) case that; on the supposition that." OED Online (Dec. 2011), http://www.oed.com/viewdictionaryentry/Entry/131463, and http://www.oed.com/view/Entry/91152?rskey=0eQULd&result=2&isAdvanced=false&print (all Internet materials as visited Dec. 20, 2011, and available in the Clerk of Court's case file).

As the old parole statute clearly states, the Board was authorized to grant parole *only if* it *first* concluded, to a reasonable probability, that: (1) a prisoner would conduct himself as a law-abiding citizen if he were released and (2) his release was not incompatible with society's welfare. The statute, by its very terms, does not mandate Plaintiff's release but, instead, places a limit on the Board's power to parole based on whether the abide-by-the-law and welfare-of-society provisions have been satisfied.

Moreover, Tennessee courts have found that, under Tenn. Code. Ann. § 40-28-301 (1982 Repl.), the sole law governing the release eligibility of Class x felons, such as Plaintiff, is contained in the provision which "*permits* class X felons to be eligible for parole after serving 40% of the sentence actually imposed by the sentencing court" and "makes no other provisions for Class X felons." *Ishaaq v. Tennessee Dep't of Corr.*, No. M20000-1957-COA-R3-CV, 2001 WL 1660825, at *2 (Tenn. Ct. App. Dec. 28, 2001) (emphasis added). Therefore, even if the Court assumes, but does not find, that parole was mandatory for some prisoners, it was never mandatory for *Plaintiff*, considering that his offenses were Class x felonies.

To sum up, Plaintiff committed serious offenses; the Board, in making parole decisions for other prisoners, using the old parole laws, deemed the release of offenders who engaged in serious criminal conduct to be incompatible with the welfare of society; and the Board, under

both old and new parole laws, lacks authority to parole a prisoner whose release is found to be incompatible with the well-being of society. Plaintiff has presented no evidence to show that, in his specific situation, retroactive application of the new parole law, in which "shall" has been replaced with "may," creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes". *Morales*, 514 U.S. at 509. The Court sees no ex post facto violation and no merit to Plaintiff's claim to the contrary.

IV. **Conclusion**

For all these reasons, Defendant's motion to dismiss, (Ct. File No. 10), will be **GRANTED**, and this action will be **DISMISSED**.

A separate order will enter.

**ENTER**:

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**